# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## OCTOBER TERM, 1880.

[No. 985.]

### N. A. MERRILL, APPELLANT, v. JOHN DIXON ET AL., RESPONDENTS.

CLAIM AND DELIVERY OF PERSONAL PROPERTY—OWNER OF LAND ENTITLED TO WOOD CUT THEREON.—The owner of land is entitled to wood cut thereon, and can maintain an action therefor, if its identity can be established.

EVIDENCE TO ESTABLISH CHARACTER OF MINERAL LAND—MAP OF UNITED STATES SURVEYOR INCOMPETENT.—Plaintiff offered to show that the land, on which the wood was cut, had been returned, and denominated mineral lands on the map, of the township, regularly made and filed by the United States surveyor: *Held*, that the testimony was properly excluded by the court.

IDEM—MINERAL MUST BE VALUABLE.—The mere fact that the land contained " copper, gold, and silver-bearing quartz," does not impress it with the character of mineral land, within the meaning of the act of congress, excluding mineral lands from the grant. Only lands valuable for mining purposes are reserved from sale.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion.

*William Cain*, for Appellant:

I. The court erred in ruling out the testimony, that the

VOL. XV—26

land, upon which the wood was cut, had been returned, and denominated as mineral land. (*Patterson* v. *Winn,* 11 Wheat. 380; *Railroad Co.* v. *Smith,* 9 Wall. 98, 100; *Doll* v. *Meador,* 16 Cal. 325; *People* v. *Stratton,* 25 Id. 251; *Read* v. *Caruthers,* 47 Id. 181; *McLaughlin* v. *Powell,* 50 Id. 64.)

II.　James Henry was in the actual possession of this land, and cutting this wood, subject only to the regulations of the United States, in good faith and claim, and color of right, and not as a bare trespasser, by bow and spear, and the railroad could not claim the wood. (13 U. S. Stats. 358, 4; *Halleck* v. *Mixer,* 16 Cal. 578; *Kimball* v. *Lohmas,* 31 Id. 156; 2 Pars. Cont. 136; 3 Id. 200; *Hyde* v. *Cookson,* 21 Barb. 104; *Brown* v. *Sax,* 7 Cow. 94, dissenting opinion; *Page* v. *Fowler,* 39 Cal. 417; *Stockwell* v. *Phelps,* 34 N. Y. 363; *Peck* v. *Brown,* 5 Nev. 81.)

*W. Webster,* for Respondents:

I.　The patent to the Central Pacific Railroad is not before the court in any form, and the court will not assume that the patent contains matter that would entitle the appellant to show that the lands granted or conveyed were not within the scope of the grant and patent by the government to the Central Pacific Railroad.　Error should appear affirmatively in the record. (4 Nev. 414; 3 Id. 164.)

II.　The true owner of land may maintain replevin to recover wood cut on the land by one in possession of the same without color of title. (*Kimball* v. *Lohmas,* 31 Cal. 156.)

III.　The Consolidated Poe Mining Company is equally guilty with Henry of a trespass. (*Whitman Gold and Silver Mining Company* v. *Trille,* 4 Nev. 499.)

*William Cain,* for Appellant, in reply:

I.　The court will not assume that the patent conveyed any land to the Central Pacific Railroad Company not granted to it by the acts of congress. (1 Greenl. on Ev., sec. 38.)

II.　The Consolidated Poe Mining Company had the right to cut the wood for mining purposes, the land being more

than ten miles from the railroad.    (13 U. S. Stat. 358, sec. 4; 1 Greenl. Ev., sec. 10.)

By the Court, LEONARD, J.:

This is an action to recover the possession of three hundred and ninety-eight cords of cedar wood, or its value, in case a delivery can not be had.

At the time the action was commenced, plaintiff claimed and had a delivery of the wood to him.   The jury found a verdict for the defendants for a return of the wood or its value.   This appeal is from the judgment and from an order denying plaintiff's motion for a new trial.

The facts of the case, necessary to be stated, are as follows:   In the fall of 1876, one James Henry, under a contract with the Consolidated Poe Mining Company, cut the wood in question for said company, upon the west half of section 9, township 21 north, range 19 east, Mount Diablo base and meridian; the same being about fourteen miles north of Reno, in this state, on the line of the Central Pacific Railroad, and about ten miles east of the Consolidated Poe Mining Company's works.

Neither Henry nor the Poe Company, in a legal sense, claimed, or had any right, title, or interest in, or claim to any part of said section 9, whereon the wood in question was cut.   Nor, in the same sense, had either the possession of the land.   There were growing trees upon the tract, in September, 1876, and Henry entered and cut and piled the wood in controversy, for the Poe Company's use at its mill, at an agreed price per cord.

In August, 1877, before it was removed, the wood was attached by the creditors of the Poe Company, and at sales under executions issued upon judgments recovered in the attachment suits mentioned, it was purchased by plaintiff, August 23, 1877.

Defendants claim the wood in question by purchase from the Central Pacific Railroad Company in September, 1877, and the purchase is not denied.

It is not and can not be disputed, that the land upon which the wood was cut belonged, at that time, to the rail-

road company, unless it was mineral land, and, as such, excepted from the operation of the grant, stated in the acts of congress, approved July 1, 1862, and July 2, 1864. (See Statutes at Large, vol. 12, 492, and vol. 13, 358.)

If the railroad company owned the land when the wood was cut by Henry, it was entitled to the wood cut thereon, and it could have maintained this action therefor, or its value, so long as its identity could be established (*Harlan* v. *Harlan*, 15 Pa. St. 513; *Wincher* v. *Shrewsbury*, 2 Scam. 284; *Kimball* v. *Lohmas*, 31 Cal. 158); and defendants succeed to the rights of the railroad company. Plaintiff's motion for a new trial, and the ground relied upon for a reversal of the judgment, was, and is, based upon an alleged error of the court below, in excluding the evidence of Don Barker, in rebuttal, as to the character of the land upon which the wood in controversy was cut, whether mineral, or otherwise, as returned and denominated by the United States surveyor. The witness testified that he was a deputy United States surveyor, and was familiar with the manner of surveying the public lands of the United States; that he had before the court a duly certified copy of the map of the township embracing the land upon which the wood in question was cut. He presented the map, with its certificates by the United States surveyor, showing that it was strictly conformable to the field-notes of the survey of that township, on file in the United States surveyor's office. He then continued to testify as follows:

"I have never been over this land myself, and do not know the nature of this section 9, whether mineral land or agricultural; but on this plat it is returned and denominated as copper, gold, and silver-bearing quartz, and from this I judge that such is its nature."

Defendants objected to that testimony as immaterial, incompetent, and irrelevant. The objection was sustained by the court, and an exception taken by plaintiff.

The statement does not contain a copy of the patent from the United States conveying the land upon which the wood was cut; but it is said, by counsel for plaintiff, that it con-

tains a special reservation of mineral lands, according to the terms of the acts of congress before mentioned.

We find from the report of the land commissioner (2 Lester's Land Laws, 337), that, "in every case reported from the district land officers, of selections made under the acts of 1862 and 1864, for the Pacific railroad, the agent of the company, in the first instance, is required to state in his affidavit that the selections are not interdicted, mineral, or reserved lands, and are of the character contemplated by the grant. Upon the filing of lists, with such affidavits attached, it is made the duty of registers and receivers to certify to the correctness of the selections in the particulars mentioned, and in other respects. They subsequently undergo scrutiny at this office, are tested by our plats, and by all the data on our files, sufficient time elapsing, after the selections are made, for the presentation of any objections to the department, before final action is taken; and to more effectually guard the matter, there is inserted in all patents issued to said railroad company a clause to the following effect: 'Yet, excluding and excepting from the transfer by these presents all mineral lands, should any such be found to exist in the tracts described in this patent, this exception, as required by statute, not extending to coal and iron land.'"

For the purposes of this case, we shall consider that all mineral lands which were intended by congress to be excluded and excepted from the operation of the grant to the railroad company, were excluded and excepted by the patent conveying the lands to the said company upon which this wood was cut. And, although we are strongly impressed with the idea that the plaintiff's relation to the title is not such as to allow him to question the validity and efficacy of the patent (*Doll* v. *Meader*, 16 Cal. 324), still, it being unnecessary, that subject will not be considered.

Counsel for plaintiff says in his brief that, the reason why the testimony of Barker was offered was, "to show that the land on which the wood was cut had been returned and de-

nominated mineral lands."    But suppose it was so returned and denominated?

That fact would not tend to show that the land was such mineral land as was excepted and excluded by the grant. The text of the act of 1864, as it appears in 13 Statutes at Large, at page 358, is as follows: "And any lands granted by this act, or the act to which this is an amendment, shall not defeat or impair any pre-emption, homestead, swamp land, or other lawful claim, nor include any government, reservation, or mineral lands, or the improvements of any *bona fide* settler, or (on) any lands returned and denominated as mineral lands.   *   *   *   The word "or," last used in the sentence quoted, should read "on."   (See 2 Lester's Land Laws, 123.)   So the statute should read as follows:

"And any lands granted by this act   *   *   *   shall not *   *   *   include   *   *   *   any mineral lands, or the improvements of any *bona fide* settler on any lands returned and denominated as mineral lands."

The witness, Barker, did not pretend to know anything about the lands embraced in section 9. He did not know whether they were at all valuable for mining purposes. He simply knew they were returned and denominated upon the map as "copper, gold, and silver-bearing quartz."

After the company's patent from the government was admitted in evidence, the burden of proof was upon plaintiff to show, admitting he was in situation to demand the right to do so, that the tract described therein was, in fact, such mineral land, that it was excepted from the operation of the grant and by the terms of the patent. Neither the map nor the testimony of Barker tend to show that fact. It can only be claimed that the map showed, *prima facie*, that there was, upon the section, "copper, gold, and silver-bearing quartz;" but it did not tend to show whether it was there in quantity or quality sufficient to make the land valuable for mining purposes, and if that was not shown, proof of the *prima facie* fact just mentioned did not tend to show such mineral lands as are excluded from the grant.

In excluding mineral lands, congress only intended to exclude lands valuable for mining purposes. It is only valuable mineral lands and deposits that are reserved from sale, except as provided by law, in respect to mineral lands. (See U. S. Rev. Stats., secs. 2318, 2319.)

In *Alford* v. *Barnum*, 45 Cal. 484, the court said: "But it is contended by the defendant, that the land in controversy was 'mineral land,' and so, within the reservation of the act of congress of July 1, 1862, and July 2, 1864, by which public lands were granted to the railroad company, and within the exceptions and reservations of the patent which, in this respect, follows the terms of the grant. * * * The mere fact that portions of the land contained particles of gold or veins of gold-bearing quartz rock, would not necessarily impress it with the character of mineral land within the meaning of the acts referred to. It must, at least, be shown that the land contains metal in quantities sufficient to render it available and valuable for mining purposes. Any narrower construction would operate to reserve, from the uses of agriculture, large tracts of land which are pratically useless for any other purpose, and we can not think this was the intention of congress." It is well known that it is the constant practice of the land department to allow lands returned, denominated, and claimed as mineral lands, to be purchased as agricultural lands, upon satisfactory proof that they are not valuable for mining purposes.

The judgment and order appealed from are affirmed.